APPENDIX I

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Crozer-Keystone Health Systems, Inc. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Directory Assistants, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a)  Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.  ( )

(b)  Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits  ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos  ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)  ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (✓)

| | | |
|---|---|---|
| August 8, 2006 | Craig D. Mills, Esquire | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 665-3863 | (215) 665-8760 | Craig.mills@bipc.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

APPENDIX N

SUMMONS IN A CIVIL ACTION

| UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA | |
|---|---|
| Crozer-Keystone Health Systems, Inc.<br><br>Plaintiff,<br><br>v.<br><br>Directory Assistants, Inc.<br><br>Defendant. | CIVIL ACTION NO<br><br>TO: (NAME AND ADDRESS OF DEFENDANT)<br><br>Directory Assistance, Inc.<br>500 Winding Brook Drive<br>Glastonbury, CT  06033 |

YOU ARE HEREBY SUMMONED and required to serve upon

Plaintiff's Attorney (Name and Address)     Craig D. Mills, Esquire
Patrick T. Casey, Esquire
Buchanan Ingersoll & Rooney PC
1835 Market Street, 14th Floor
Philadelphia, PA  19103

an answer to the complaint which is herewith served upon you, within     days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

| Michael E. Kunz, Clerk of Court | Date:     August 8, 2006 |
|---|---|
| (By) Deputy Clerk | |

≈JS 44   (Rev 11/04)                         **CIVIL COVER SHEET**                                    APPENDIX H

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court  This form, approved by the Judicial Conference of the United States in September 1974. is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM )

| I. (a)   PLAINTIFFS | DEFENDANTS |
|---|---|
| Crozer-Keystone Health Systems, Inc. | Directory Assistants, Inc.        Hartford |

| (b)   County of Residence of First Listed Plaintiff   Delaware County | County of Residence of First Listed Defendant |
|---|---|
| (EXCEPT IN U S  PLAINTIFF CASES) | (IN U S  PLAINTIFF CASES ONLY) |
| | NOTE:  IN LAND CONDEMNATION CASES. USE THE LOCATION OF THE LAND INVOLVED |

| (c)   Attorney's (Firm Name. Address. and Telephone Number)   Craig Mills/Patrick Casey | Attorneys (If Known) |
|---|---|

**II.  BASIS OF JURISDICTION**   (Place an "X" in One Box Only)

- ☐ 1   U S  Government Plaintiff
- ☐ 3   Federal Question (U S  Government Not a Party)
- ☐ 2   U S  Government Defendant
- ☑ 4   Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☑ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☑ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV.  NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl  Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☑ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U S  Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer  w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer  w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

**V.  ORIGIN**   (Place an "X" in One Box Only)

- ☑ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from another district (specify)
- ☐ 6   Multidistrict Litigation
- ☐ 7   Appeal to District Judge from Magistrate Judgment

**VI.  CAUSE OF ACTION**
Cite the U S  Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):   28 USC §1332
Brief description of cause:   Breach of Settlement Agreement

**VII.  REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ Fees & Costs     CHECK YES only if demanded in complaint:     JURY DEMAND:   ☐ Yes   ☑ No

**VIII.  RELATED CASE(S) IF ANY**   (See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG JUDGE _____

UNITED STATES DISTRICT COURT                    **APPENDIX F**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: Healthplex Pavilion II, 100 West Sproul Road, Springfield, PA 19064

Address of Defendant: 500 Winding Brook Drive, Glastonbury, CT 06033

Place of Accident, Incident or Transaction: Delaware County, PA
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7 1(a))___          Yes☐   No☑

Does this case involve multidistrict litigation possibilities?          Yes☐   No☑
*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?          Yes☐   No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?          Yes☐   No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?          Yes☐   No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☑ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify)

**ARBITRATION CERTIFICATION**
*(Check appropriate Category)*

I, Craig D. Mills, Esquire                    , counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53 2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☑ Relief other than monetary damages is sought

DATE: August 8, 2006          _____          81331
                              Attorney-at-Law                    Attorney I D #

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: August 8, 2006          _____          81331
                              Attorney-at-Law                    Attorney I D #

CIV 609 (4/03)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Crozer-Keystone Health System    :
                           :
           Plaintiff,       :
                           :     CIVIL ACTION NO. _____
     v.                    :
                           :
Directory Assistants, Inc.        :
                           :
          Defendant.     :

## COMPLAINT

Plaintiff Crozer-Keystone Health System ("CKHS"), by and through its counsel,

Buchanan Ingersoll & Rooney, PC, asserts the following claims against defendant Directory

Assistants, Inc. ("DAI") and in support thereof hereby states as follows:

### INTRODUCTION

1.     This is an action to enforce a settlement agreement and mutual release

("Settlement") that was intended to resolve all disputes between the parties arising under a

contract in which DAI agreed to provide consulting services to CKHS regarding advertising in

various telephone directories (the "Consulting Contract").

2.     The Settlement specifically states that the Consulting Contract is thereby

terminated in its entirety, including the dispute resolution and arbitration procedures set forth in

the Contract for resolving any claims thereunder.

3.     Because the Settlement was intended to end the parties' entire dispute, the parties

specifically agreed that they would not revive the Consulting Contract dispute resolution

procedures, or file or bring any suit or demand for arbitration before any type of tribunal.  The

Settlement further provides that if either party should breach this provision and attempt to

reopen the arbitration procedure or otherwise continue to pursue claims against the other, the

defendant or non-initiating party would have the right to a protective order or summary judgment quashing such action, and to recover its fees and costs in defending against it.

4.     In consideration for this Settlement, CKHS paid DAI the amount of fifty-thousand dollars ($50,000) in full settlement of DAI's claims against CKHS. DAI in turn agreed to seek no further payment from CKHS.

5.     Now, after: 1) orally agreeing to the terms in the Settlement; 2) agreeing to the final written version of those terms; 3) signing the Settlement and returning it to CKHS; and 4) accepting and cashing CKHS's check for the $50,000 in consideration, DAI has abruptly declared the Settlement void and has reopened the arbitration process under the Consulting Contract, all on the grounds that CKHS did not sign and return the final version of the Settlement to it within 24 hours, as DAI demanded of CKHS after DAI signed the Settlement. In repudiating the Settlement, DAI has announced its intent to file a formal demand for arbitration and seek substantial additional sums from CKHS.

6.     Accordingly, CKHS brings this action to obtain a judgment against DAI for breach of contract and awarding reasonable attorneys' fees, expenses and costs incurred in securing such relief. In the alternative, CKHS seeks a declaratory judgment against DAI declaring that the Settlement is a valid and enforceable contract that both bars DAI from pursuing any further claims against CKHS regarding the Consulting Contract and requires DAI to reimburse CKHS for its fees and costs in this action. In addition, CKHS seeks permanent (and, if necessary, preliminary) injunctive relief barring DAI from filing or prosecuting a demand for arbitration under the Consulting Contract.

2

## PARTIES

7.      CKHS is a Pennsylvania non-profit corporation with its principal place of business at Healthplex Pavilion II, 100 West Sproul Road, Springfield, Pennsylvania. CKHS is a leading healthcare provider in Delaware County, Pennsylvania and provides a full spectrum of wellness, prevention, acute care, rehabilitation and restorative care to the community through Crozer-Chester Medical Center, Delaware County Memorial Hospital, Springfield Hospital, Taylor Hospital, Community Hospital and Healthplex.

8.      DAI is a Connecticut corporation with its principal place of business at 500 Winding Brook Drive, Glastonbury, Connecticut. According to its marketing materials, DAI provides cost saving suggestions, theories, options and advice an advertiser can use to reduce its yellow and white page advertising expenses.  DAI regularly conducts business in this District, both generally and specifically with regards to the transaction at issue here.

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction over the subject matter hereof pursuant to 28 U.S.C. § 1332(a), as complete diversity exists between the parties and the amount in controversy is in excess of $75,000, exclusive of interest, fees, and costs.

10.      Jurisdiction in this Court is also proper under 28 U.S.C. § 1331, as CKHS is seeking declaratory judgment under the Declaratory Judgments Act, 28 U.S.C. § 2201.

11.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial amount of the acts or circumstances giving rise to this action occurred within this District.

## FACTS

### CKHS's Contract with DAI

12.    CKHS provides a full spectrum of healthcare services in the Delaware County community and in furtherance of those services places many ads in various yellow and white pages of local telephone directories.

13.    CKHS, seeking to cut down on costs for such advertising, entered into the Consulting Contract with DAI on or around June 19, 2002. A true and correct copy of the Consulting Contract is attached as Exhibit A hereto.

14.    In or around July 2003, a dispute arose between the parties wherein CKHS claimed DAI was not properly providing the consulting services due under the Consulting Contract. DAI, in turn, claimed CKHS was not remitting payments due to DAI. Ultimately, DAI claimed that CKHS owed DAI well over $100,000 in payments, while CKHS claimed that DAI caused CKHS to suffer at least that much in damages through its inaccurate and incomplete placement of telephone listings.

15.    The Consulting Contract contains a dispute resolution procedure that first requires the parties to meet and confer to attempt to resolve their differences. If this informal settlement attempt fails, the parties may proceed to formal arbitration. *See* Exhibit A, at page 3.

16.    DAI initiated the Consulting Contract dispute resolution procedures by demanding to meet and confer with CKHS regarding the parties' claims and counterclaims. Thereafter, the parties engaged in lengthy oral and written settlement discussions that finally resulted in an agreed-upon settlement agreement in June 2006.

### The Settlement Agreement

17.    David Ford, an attorney and President of DAI, was principally involved in the parties' settlement discussions on DAI's behalf.

4

18.     After orally agreeing to the settlement terms with CKHS's counsel in June 2006, Ford also agreed to a final written version of the Settlement. A true and correct copy of the Settlement is attached hereto as Exhibit B.

19.     Section 3 of the Settlement provides that the Consulting Contract is terminated in its entirety, and that neither party shall have any continuing obligations or duties under the Contract. The parties further agreed that all disputes arising under the Consulting Contract were resolved by the Settlement, and that neither has any right to resume or reactivate the dispute resolution procedures described in the Consulting Contract.

20.     In Section 4 of the Settlement, the parties promised that they would not file, revive or reopen the dispute resolution procedures under the Consulting Contract, or file or bring any charge, complaint, action, demand for arbitration, or lawsuit based on any claims arising before the Settlement under that Contract. The parties further agreed that if either of them should attempt to revive their dispute through the dispute resolution procedures or otherwise, then the other party would be entitled to a protective order, summary judgment dismissing such action, together with reasonable attorneys' fees, expenses and costs incurred in securing such an order, dismissal or judgment.

21.     Under Section 5 of the Settlement, CKHS agreed to pay DAI $50,000 in full settlement of DAI's claims against CKHS. DAI, in turn, agreed to seek no further payments from CKHS. Concerning the time for payment, the Agreement specifically states that **"CKHS shall pay the Settlement Amount within ten (10) days of the execution of this Agreement by *both parties.*** (Exhibit A, ¶ 5(b)) (emphasis added).

22.     Section 6 of the Settlement provides that in consideration for the mutual promises set forth in the Settlement the parties thereby fully release, acquit and forever discharge one

another from any and all claims, actions, causes of action, charges, judgments, grievances, agreements, contracts, obligations, rights, demands, debts, sums of money, compensatory or punitive or any other damages, attorneys' fees, costs, losses, liabilities or accountings of whatever nature in law or equity arising under the Consulting Contract.

23.    Section 7 of the Settlement states that the mutual promises, considerations and releases set forth in the Settlement shall be considered a full, final and complete settlement of all claims asserted or unasserted between the parties arising out of, or based on the Consulting Contract and the termination of the Contract.

24.    In Section 17 of the Settlement, the parties agreed that the Settlement may be executed in counterparts, and that any version containing the signatures of one party shall be deemed an original with the same force and effect as if executed in one complete document.

25.    Although the Settlement thus expressly contemplates that it would not be executed simultaneously by the parties, it does not contain any deadlines or time within which the separate signatures must be executed.

26.    DAI received a copy of the final version of the Settlement Agreement on June 23, 2006. On June 27, 2006, DAI, through its Vice President and authorized representative Michael Cody, signed the Settlement and returned it via regular U.S. Mail to CKHS's counsel for signature by CKHS. See Exhibit B.

27.    Counsel for CKHS received DAI's signed copy of the Settlement on July 3, 2006, or 10 days after DAI had received the final version for signature. CKHS's counsel forwarded DAI's signed copy of the Settlement to CKHS for signature on the next business day, July 5, 2006. CKHS received the DAI-signed copy on either Friday, July 7 or Monday, July 10, 2006.

6

28.     On July 12, 2006, without prior warning or any basis in the Settlement, Ford sent counsel for CKHS an e-mail demanding that CKHS deliver a check in payment of the $50,000 Settlement Amount within 24 hours, or he would consider the Settlement void. At this point, CKHS had not yet executed the Settlement Agreement, such that the 10-day payment period set out in ¶ 5(b) thereof had not yet begun. Moreover, CKHS had only had DAI's signed version of the Settlement in hand for two or three days -- far less time than DAI had held the final written version before signing and returning it. A true and correct copy of Ford's July 12, 2006 demand e-mail is attached hereto as Exhibit C.

29.     CKHS signed its copy of the Settlement on July 13, 2006 and drafted a check in payment of the $50,000 settlement amount to DAI on July 14, 2006.

30.     However, on the morning of July 14, Ford sent CKHS's counsel yet another email, purporting to withdraw from the Settlement on the grounds that CKHS had not complied with his unilateral and unfounded 24-hour payment ultimatum. Ford requested that CKHS return his signed version of the Settlement, and stated that any money DAI received from CKHS would be "considered to be payments towards the balance owed." Ford went on to request dates on which CKHS could again meet and confer regarding their dispute, thus attempting to revive the dispute resolution procedures under the Consulting Contract. A true and accurate copy of Ford's July 14 e-mail is attached hereto as Exhibit D.

31.     Counsel for CKHS responded several hours later with a letter pointing out that DAI's unilateral 24-hour payment demand was not only without legal basis, but was in fact contrary to the payment provisions of ¶ 5(b), which allowed CKHS 10 days from the date of both parties' signature to deliver payment. CKHS's counsel also noted that, as a matter of equity and chronology, CKHS was delivering payment to DAI within 10 days of its receipt of DAI's signed

version of the letter -- the same period of time that had elapsed between the date that DAI received the final version of the Settlement and the date that DAI returned its signed version of that Settlement to CKHS. The letter went on to state that CKHS had already executed the Settlement and was forwarding that agreement and its $50,000 check in payment of the settlement amount for next day delivery. Finally, CKHS's counsel stated in that letter that, "[i]f DAI cashes this check, it will constitute its acknowledgement that the Settlement Agreement is in effect." A true and correct copy of this July 14, 2006 letter from counsel for CKHS to Ford is attached hereto as Exhibit E.

32.     On the evening of July 14, after receiving the faxed copy of CKHS's July 14 letter, and after CKHS had already dispatched its signed version of the Settlement and the $50,000 check to DAI, Ford replied to the July 14 letter in an e-mail stating that he "disagreed" with the letter, and criticizing CKHS's alleged delay in signing the Settlement and making payment. *See* Exhibit D. A true and correct copy of the Settlement executed by CKHS is attached hereto as Exhibit F.

33.     DAI cashed CKHS's check on or about July 17, 2006 and retained the resulting funds. A true and correct copy of CKHS's check cashed by DAI is attached hereto as Exhibit G.

34.     CKHS was therefore surprised to receive yet another email from Ford on July 26, 2006, in which he again demanded that CKHS provide dates to meet and confer as part of the Consulting Contract dispute resolution process. A true and accurate copy of this e-mail is attached hereto as Exhibit H.

35.     Because CKHS believed that DAI had never had the right or ability to renounce the Settlement, and in any case had waived or lost any such right or ability by accepting the settlement amount, CKHS at first believed that this e-mail had been sent in error. Between July

8

26 and August 4, 2006, CKHS counsel contacted DAI on several occasions to confirm and demand that DAI would abide by the Settlement.

36.     In response to these demands for assurance, Ford confirmed to CKHS counsel, both orally and in writing, that DAI had repudiated the Settlement (even while retaining the Settlement proceeds), and intended to file a demand for arbitration under the Consulting Contract in the near future. A true and accurate copy of an August 4, 2006 e-mail from Ford to CKHS's counsel announcing this intent is attached hereto as Exhibit I.

## COUNT I
### Breach of Contract

37.     Plaintiff incorporates the allegations of paragraphs 1 through 36 as if set forth at length herein.

38.     The Settlement constitutes a valid and enforceable contract between CKHS and DAI, and is binding upon DAI.

39.     CKHS has duly performed all of its obligations under and met all conditions of the Settlement.

40.     Under the Settlement, DAI had and continues to have a material duty to refrain from resuming or attempting to resume the dispute resolution procedures under the Consulting Contract, or to otherwise pursue its prior claims against CKHS under that Contract.

41.     Under the Settlement, CKHS has a right to a protective order against any attempt that DAI might make to revive its claims against CKHS.

42.     DAI has willfully breached its material contractual duties by resuming or attempting to resume the Consulting Contract's dispute resolution procedures. Specifically, DAI

9

has demanded that the parties meet to conduct the informal pre-arbitration settlement discussions, and has declared its intent to file a demand for arbitration regarding its claims.

43.     As a result of DAI's continuing breach of the Settlement, CKHS has suffered and continues to suffer harm in the form of monetary damages in the form of counsel fees incurred in responding to DAI's attempts to take up its claims, including but not limited to it fees in bringing this action.  Should DAI proceed with its announced plan to file a demand for arbitration, CKHS will suffer additional tangible and intangible damages in the form of additional attorney fees and costs, as well as the burden of having to respond to DAI's allegations and otherwise participate in the arbitration process.

## COUNT II – DECLARATORY RELIEF

44.     Plaintiff incorporates the allegations of paragraphs 1 through 43 as if set forth at length herein.

45.     An actual and justiciable dispute exists between CKHS and DAI regarding the validity and enforceability of the Settlement and their respective rights and duties thereunder.

46.     CKHS contends that the Settlement is a valid and enforceable agreement that resolves and terminates all disputes between the parties arising under the Consulting Contract. Further, the Settlement terminates the Consulting Contract and all provisions providing for any form of dispute resolution outside of the terms of the Settlement.

47.     DAI contends that the Settlement is not valid and despite cashing CKHS's check, issued pursuant to the Settlement, seeks to institute arbitration under the Consulting Contract, which was terminated by the Settlement.

48.     A declaration by the Court determining the validity and enforceability of the

Settlement and the parties' respective rights and duties thereunder is necessary to properly

resolve this dispute.

49.     Accordingly, an actual controversy has arisen and CKHS prays that the Court

resolve the controversy by declaring as follows:

> a) the Settlement is a valid and binding contract between the parties;
>
> b) that under the Settlement, DAI is obligated to refrain from pursuing its claims against CKHS arising under or concerning the Consulting Contract; and
>
> c) that under the Settlement, CKHS is entitled to recover its costs and fees from DAI in responding to DAI's claims and bringing this action, together with pre- and post-judgment interest thereon at the maximum legal rate;

**WHEREFORE**, plaintiff Crozer-Keystone Health System respectfully prays the Court:

1.     For judgment in its favor and against DAI on Count I of this Complaint, finding

DAI in breach of the Settlement and awarding CKHS compensatory damages for breach of

contract, including attorney's fees and costs pursuant to the Settlement or as otherwise allowed

by law, together with pre- and post-judgment interest thereon at the maximum legal rate;

2.     In the alternative, for an order declaring that: a) the Settlement is a valid and

binding contract between the parties; b) that under the Settlement, DAI is obligated to refrain

from pursuing its claims against CKHS arising under or concerning the Consulting Contract; and

c) that under the Settlement, CKHS is entitled to recover its costs and fees from DAI in

responding to DAI's claims and bringing this action, together with pre- and post-judgment

interest thereon at the maximum legal rate;

3.     For an Order permanently enjoining DAI from filing a demand for arbitration or

otherwise pursuing its now-settled claims against CKHS;

11

4.      If DAI should proceed with a demand for arbitration or otherwise pursue its

claims against CKHS during the pendency of this action (which it has announced its intent to do,

but on information and belief has not yet done ), for an Order preliminarily enjoining DAI from

pursuing such claims in any forum until the Court has ruled on the merits of this action; and

5.      For such other and further relief that the Court may deem just and proper.

BUCHANAN INGERSOLL & ROONEY, PC


Craig D. Mills
Patrick T. Casey
Pennsylvania Id Nos. (81331/93985)
1835 Market Street, 14th Floor
Philadelphia, Pennsylvania  19103
(215) 665-8700

Attorneys for Plaintiff


Dated:  August 8, 2006